UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-05083-RGK (PJWx) | Date | December 1, 2014 |
|---|---|---|---|
| Title | *RESH, et al. v. CHINA AGRITECH, INC., et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order re: Defendants Charles Law and China Agritech, Inc.'s Motions to Dismiss (DE 27, 28)

## I.     INTRODUCTION

On September 4, 2014, Michael H. Resh ("Resh"), William Schoenke, Heroca Holding B.V., and Ninella Beheer B.V. (collectively, "Plaintiffs") filed an Amended Class Action Complaint ("FAC") against China Agritech, Inc. ("China AG") and members of the company's executive management team and board of directors ("Individual Defendants"). Plaintiffs allege violations of: (1) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 against China AG and Individual Defendants; and (2) Section 20(a) of the Exchange Act against Individual Defendants. Among the Individual Defendants named in the FAC is Charles Law ("Defendant Law" or "Law").

Plaintiffs bring this class action on behalf of all persons and entities who purchased the publicly traded common stock of China AG between November 12, 2009 and March 11, 2011 (the "Class Period"). Class actions on behalf of classes identical to that in the present case have been filed with this Court on two prior occasions, in actions entitled *Dean v. China Agritech, Inc.*, No. CV 11-01331-RGK (PJWx), 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011), and *Smyth v. Yu Chang*, No. CV 13-03008-RGK (PJWx) (C.D. Cal. filed Apr. 19, 2012).

Presently before the Court are motions to dismiss filed by China AG and Defendant Law (the "Moving Defendants"). In Defendant Law's motion, he joins in China AG's motion, and adopts and incorporates it by reference. (*See* Defendant Law's Mot. 1 n.1, 18:2-5.) For the following reasons, the Court **GRANTS** Moving Defendants' motions.

## II.     FACTUAL BACKGROUND

China AG is a holding company incorporated in the state of Delaware with its principal place of business in Beijing, China. China AG manufactures and distributes organic compound fertilizers for agricultural application in China. The company was publicly traded within the United States as a result of a financial technique known as a "reverse merger." In a reverse merger, a private company seeking to trade or sell shares in public equity markets acquires a publicly traded shell company in order to quickly go public and avoid certain regulatory requirements. Once the reverse merger is complete, management of the former private company generally takes control of the merged company. China AG completed its merger in 2005 and began publicly offering its stock on the NASDAQ stock exchange. On October 17, 2012, the SEC issued an enforcement order revoking the registration of China AG's stock.

Defendant Law was a director of China AG from January 2010 until his resignation in February 2011. During this time, Law also served on the Compensation and Nominating and Governance Committees. In 2005, prior to Defendant Law's appointment as a director, his law firm, King & Wood, represented China AG in connection with its initial reverse merger registration.

Plaintiffs are four individual investors who allegedly purchased China AG's common stock between November 12, 2009 and March 11, 2011.

### A.     Alleged Wrongful Conduct

Plaintiffs allege that China AG materially misstated its net revenue and income for the third quarter of 2009 on its SEC Form 10-Q filing. Plaintiffs allege that China AG also materially misstated its net revenue and income for fiscal years 2008 and 2009 in its 2009 SEC Form 10-K filing. Plaintiffs further allege that Defendants concealed related-party transactions between a China AG subsidiary and a third-party supplier owned by one of the Individual Defendants.

On February 3, 2011, Lucas McGee Research published a report ("LM Report") contending that China AG was a fraud and alleging that the company's factories were either non-operational or were producing far less than reported. The report further stated that China AG had filed financial statements with the SEC for fiscal year 2009 that showed substantially larger net revenue than China AG reported in filings to the Chinese State Administration for Industry and Commerce ("SAIC") for the same period. After publication of the report, the value of China AG stock declined from $10.78 per share on February 2, 2011, to $9.85 per share on February 3, 2011, representing a day-over-day decline of 8.63%. On February 15, 2011, Bronte Capital issued a report ("BC Report") with similar allegations about China AG's production levels. China AG's stock value again declined from $9.21 per share on February 4, 2011 to $7.44 per share on February 16, 2011, a decline of approximately 16%. As a result of Defendants' actions, Plaintiffs allegedly suffered damages in connection with the purchase of their China AG stock.

Plaintiffs allege that during this time, Individual Defendants, including Defendant Law, acted as controlling persons of China AG. Each of these Individual Defendants had direct and supervisory involvement in the day-to-day operations of China AG and were directly or indirectly involved in the dissemination of the various fraudulent statements.

### B.     Related Cases

As discussed, class actions involving substantially similar allegations against China AG and classes identical to the present one proposed by Plaintiffs have previously been filed twice before this Court.

The complaint in *Dean* was filed on February 11, 2011. On May 3, 2012, this Court denied the *Dean* plaintiffs' motion for class certification because the plaintiffs failed "to establish that questions of law or fact common to class members predominate[d] over any questions affecting only individual members," as was necessary for class certification pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3). (Order Den. Mot. Class Cert. at 7, *Dean v. China Agritech, Inc.*, No. CV 11-01331-RGK (PJWx) (C.D. Cal. Oct. 27, 2011), ECF No. 134.)

Subsequently, the complaint in *Smyth* was filed on October 4, 2012. On September 26, 2013, this Court denied the *Smyth* plaintiffs' motion to certify the class. (Order Den. Mot. Class Cert., *Smyth v. Yu Chang*, No. CV 13-03008-RGK (PJWx) (C.D. Cal. filed Apr. 19, 2012), ECF No. 112.) The motion was denied largely because plaintiffs failed to satisfy the "typicality" and "adequacy of representation" requirements of Rule 23(a)(3)-(4). (*Id.* at 4-7.) On January 2, 2013, all claims asserted by plaintiffs were voluntarily dismissed with prejudice. (*See generally* Order Granting Mot. Dismiss, *Smyth v. Yu Chang*, No. CV 13-03008-RGK (PJWx) (C.D. Cal. filed Apr. 19, 2012), ECF No. 136.)

## III. JUDICIAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must assume allegations in the challenged complaint are true, and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Although the complaint need not contain detailed factual allegations, it must provide more than a "formulaic recitation of the elements of a claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, a pleading must contain sufficient factual matter that, if accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Dismissal is appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mediondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## IV. DISCUSSION

### A. Plaintiffs' Class Action Is Barred by the Statute of Limitations

Moving Defendants argue that Plaintiffs' class action claims are barred by the statute of limitations and, therefore, should be dismissed. The Court agrees.

A securities fraud claim must be filed no later than the earlier of (1) two years after the facts constituting the violation were, or reasonably should have been, discovered, or (2) five years after the violation occurred. 28 U.S.C. § 1658(b); *see also Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) (holding "that 'discovery' as used in this statute encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."). Here, Plaintiffs do not contest that the LM and BC Reports, published in February 2011, sufficiently provided notice that the alleged fraud occurred. As such, the two-year statute of limitations began to run at that time. Three years later, in June 2014, Plaintiffs filed their original Complaint.

Plaintiffs do not dispute that, absent the *Dean* and *Smyth* actions, the statute of limitations would have run by the time they filed their Complaint. Instead, Plaintiffs assert that the statute of limitations

was tolled during the pendency of the foregoing actions, and the Complaint was therefore timely. In order for Plaintiffs to succeed in this argument, the Court must find that the statute of limitations tolled during the pendency of not only one, but *both* of the prior actions.

The commencement of a class action can suspend the applicable statute of limitations, but only under certain circumstances. In *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974), the Supreme Court held that if the statute of limitations expires during the pendency of a class action, "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553-54. In *Crown, Cork & Seal Company v. Parker*, 462 U.S. 345 (1983), the Supreme Court expanded on its opinion in *American Pipe*, ruling that tolling is appropriate not only where plaintiffs sought to intervene in a continuing action, but also where they sought to file an entirely new action as individual plaintiffs. *Id.* at 349-50, 353-54. The Supreme Court has not, however, determined whether tolling allows the above-mentioned individuals to bring an entirely new *class action* based upon a substantively identical class. This is the issue presently before the Court.

The Ninth Circuit first addressed this issue in *Robbin v. Fluor Corporation*, 835 F.2d 213 (9th Cir. 1987). There, similar to the present case, a securities fraud class action was filed after a class action based on the same alleged fraud had been denied certification and voluntarily dismissed. *Id.* at 214. The applicable statute of limitations had expired, and the Ninth Circuit held that the statute of limitations was not tolled as to the class action during the prior action. *Id.* In reaching its decision, the court recognized that several out-of-circuit courts had rejected the position that "the tolling doctrines of *American Pipe* and *Crown, Cork* should be extended to include class members who file subsequent class actions." *See id.* (citing *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir.1987); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir.1985), *cert. denied*, 475 U.S. 1035 (1986)). The court agreed with those decisions, and held "that to extend tolling to class actions 'tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted parameters into the range of abusive options.'" *Robbin*, 835 F.2d at 214 (quoting *Korwek*, 827 F.2d at 879).[1]

Plaintiffs do not address *Robbin*. Instead, Plaintiffs cite to *Catholic Social Services, Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000) (en banc) as support for the proposition that tolling applies to the class action as long as class certification has not been previously denied on the ground that the claims were not suitable for class treatment. However, *Catholic Social Services* does not provide such support.

In *Catholic Social Services*, the Ninth Circuit found that tolling was warranted where the class had originally been certified on two occasions, but was dismissed after a statutory enactment stripped the courts of jurisdiction over certain of plaintiffs' claims. 232 F.3d at 1144-49. Following the dismissal, plaintiffs promptly filed a new class action with the district court. *Id.* at 1144. Although the new class action was filed after the statute of limitations had expired, the Ninth Circuit held that "the statute of limitations was tolled during the pendency of the first class action[.]" *Id.* at 1150. In doing so, the court emphasized that "there is no dispute in the case that the classes in the first action were properly certified." *Id.* at 1149.

The court was careful to distinguish two sets of cases. The first was *Robbin* (in turn relying on *Korwek*, 827 F.2d 874), in which the Ninth Circuit "interpreted *American Pipe* not to allow tolling . . . when the second action is no more than an attempt to relitigate the issue of class certification and thereby to circumvent the earlier denial." *Id.* at 1147. The second set of cases were decided by the Eleventh, Fifth, and Sixth Circuits, as well as various district courts, which applied the rule in *Robbin*

---

[1] In *Robbin*, the court held that the tolling doctrine of *American Pipe* did apply to preserve an *individual* action that was filed along with the class action. 835 F.2d at 215.

and *Korwek* "to cases in which a later class of plaintiffs [did] not disagree with the denial of class certification, but rather [tried] to cure the deficiency that led to the denial." *Id.* at 1147-48 (citing *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994); *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988); *Salazar–Calderon*, 765 F.2d 1334, 1351 (5th Cir. 1985)). The court explained that "[p]laintiffs in the class action now before us . . . do not seek to cure any procedural deficiencies in the classes under Rule 23 certified in the first action because there were none." *Id.* at 1149. The court's ultimate holding therefore turned on the fact that "[p]laintiffs in this case are not attempting to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class." *Id.*

*Catholic Social Services* does not support Plaintiffs' argument in the present case. Unlike in *Catholic Social Services*, where the class was properly certified twice, here class certification has been denied on two separate occasions in the *Dean* and *Smyth* actions. Whether the Court construes the current class action as an attempt to relitigate the two earlier denials or to correct procedural deficiencies in the earlier would-be classes, *Catholic Social Services* indicates that tolling does not apply.

Plaintiffs appear to read the Ninth Circuit's use of the term "procedural deficiencies" as referring solely to deficiencies related to the lead plaintiff's suitability as class representative, to the exclusion of deficiencies related to the suitability of the claims for class treatment. (*See* Pls.' Opp'n 13:6-14:3.) However, the Court finds no support in *Catholic Social Services* for such an interpretation. To the contrary, that decision indicates that the term "procedural deficiencies" does in fact apply to the suitability of claims for class treatment. As discussed, the Ninth Circuit was careful to distinguish, among other cases, the Fifth Circuit's decision in *Salazar-Calderon*, and at least implicitly approved of that decision. In discussing *Salazar-Calderon*'s holding that tolling was improper, the Ninth Circuit noted that class certification in that case "was denied for failure to satisfy the predominance and superiority criteria of Rule 23(b)(3)." *Catholic Social Services*, 232 F.3d at 1148. This failure fundamentally goes to the suitability of the claims for class treatment, and has nothing to do with the suitability of the class representative.

Plaintiffs also cite two Central District of California decisions rendered post-*Catholic Social Services*, but those decisions are similarly unavailing. First, *In re Toys "R" Us*, No. MDL 08-01980-MMM (FMOx), 2010 WL 5071073 (C.D. Cal. Aug. 17, 2010), affirms the Ninth Circuit's focus on whether the Plaintiff is seeking to relitigate an earlier denial of certification or correct a procedural defect. *Id.* at *14. It did not parse the term "procedural," as Plaintiffs do, and the issue of tolling arose in the unrelated context of plaintiffs seeking to certify subclasses in a piecemeal fashion. *Id.* at *14-15. The second case, *In re American Funds Securities Litigation*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008), was vacated and remanded on appeal. *See* 395 F. App'x 485 (9th Cir. 2010). In any event, the district court's decision actually undermines Plaintiffs' position. In *American Funds Securities Litigation*, the court noted *Catholic Social Services*' emphasis on the fact that the class had been properly certified in the first instance. 556 F. Supp. 2d at 1112. It then went on to distinguish *Catholic Social Services* and find that tolling was not proper in part because – as is true in the present case – "no class has ever been certified by this Court . . . ." *Id.*

Even if the Court were to adopt Plaintiffs' interpretation of the law, tolling would still be impermissible. The Court previously denied certification of this same putative class in the *Dean* action on the ground that the claims were not suitable for class treatment. Specifically, the Court found that plaintiffs failed to establish the "predominance" requirement of Rule 23(b)(3).

A plaintiff asserting securities fraud under Section 10(b) of the Exchange Act must prove that he or she relied upon a material misrepresentation when purchasing stock. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 242-43 (1988). To invoke a presumption of reliance in showing that it can be determined on a class-wide rather than individual basis, plaintiffs must establish that the defendant made a material misrepresentation that directly caused the rise in stock. *See Connecticut Ret. Plans & Trust Funds v.*

*Amgen Inc.*, 660 F.3d 1170, 1172 (9th Cir. 2011). In *Dean*, this Court found that the plaintiffs' expert, and as a result the plaintiffs, failed to establish "a causal relationship between [China AG's] disclosures and movement in the price of its stock." (Order Den. Mot. Class Cert. at 7, *Dean v. China Agritech, Inc.*, No. CV 11-01331-RGK (PJWx) (C.D. Cal. Oct. 27, 2011), ECF No.134.) As such, the plaintiffs were unable to invoke the presumption of reliance and therefore failed to show that the issue of reliance could be determined on a class-wide, rather than individual, basis. It was for this reason that class certification was denied.

Plaintiffs argue that this denial "was based upon the particular lead plaintiffs' experts' deficiencies rather than any suitability of the claims for class treatment." (Pls.' Opp'n 8:5-8:7, ECF No. 35.) Put differently, Plaintiffs argue that class certification was denied not because the claims were not suitable for class certification, but rather, because the plaintiffs *failed to establish* that the claims were not suitable for class certification. The Court finds this argument unpersuasive, as it would allow tolling to extend indefinitely as class action plaintiffs repeatedly attempt to demonstrate suitability for class certification on the basis of different expert testimony and/or other evidence.

For the foregoing reasons, the Court finds that the statute of limitations did not toll as to a class action during the pendency of the *Dean* or *Smyth* actions. Therefore, Plaintiffs' claims are barred as untimely. Further, because amendment "could not possibly cure th[is] deficiency," *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008), the Court **grants** Moving Defendants' Motions to Dismiss without leave to amend.

### B. Defendant Law's Remaining Arguments

Defendant Law also argues that Plaintiffs' FAC fails to state a claim for relief pursuant to Rule 12(b)(6). Defendant Law argues that Plaintiffs' FAC, as it relates to him, fails to allege facts sufficient to satisfy the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act. However, as the Court is dismissing the FAC on other grounds, it need not decide this issue.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS without leave to amend** Moving Defendants' Motions to Dismiss. Plaintiffs are hereby ordered to show cause in writing no later than December 8, 2014 as to why the Motions to Dismiss should not be granted as to the remaining defendants.

**IT IS SO ORDERED.**

**:**

**Initials of Preparer**